Filed 1/13/25  Kirkeby v. The Crosby Clinic CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| GLENN KIRKEBY et al., | D083640 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2017-00032731-CU-BT-NC) |
| THE CROSBY CLINIC, LLC, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Earl H. Maas, III, Judge.  Affirmed.

Decker Law, James Decker, and Griffin Schindler for Defendant and Appellant.

Law Offices of Robert A. Ball, Robert A. Ball, and John M. Donnelly for Plaintiffs and Respondents.

This appeal concerns an unsuccessful attempt by The Crosby Clinic, LLC (Crosby Clinic or Clinic) to obtain relief under Code of Civil Procedure section 473, subdivision (d), from a judgment entered against it and

Lawrence Burns.[1]  The judgment arose from a lawsuit filed by Glenn and Anastasia Kirkeby in 2017 against Burns and various entities, including the Crosby Clinic.  The Kirkebys alleged Burns, their former business partner, defrauded them out of millions of dollars.

Early in the litigation, the trial court entered defaults against the Crosby Clinic and several other entity defendants for failing to retain counsel.  In 2022, after Burns and his ex-wife, Anne Kahn, repeatedly violated a stipulated order preventing the sale or encumbrance of certain real property, and Burns willfully ignored other trial court orders, the court imposed terminating sanctions against Burns and entered a default against him.  At a prove-up hearing on the default, the Kirkebys requested the court vacate the default only with respect to damages and allow them to proceed to trial on the amount of damages for their established claims.  The court granted the request.  After a two-day bench trial, the court issued a final statement of decision awarding the Kirkebys $9,111,648 in compensatory damages against Burns.  The court entered a final judgment, prepared by the Kirkebys, against both Burns and the Crosby Clinic, but awarding damages to the Kirkebys only against Burns.

Months later, the Crosby Clinic moved to vacate the judgment, asserting it was void because the trial court lacked authority to vacate the default entered against Burns and because the Kirkebys had not identified the amount of damages they were seeking in their complaint in violation of sections 425.10, subdivision (a)(2) and 580.  The trial court denied the motion to vacate and the Crosby Clinic now appeals, repeating the arguments it made in the court below.  For reasons we shall explain, we reject the

---

[1]     Subsequent undesignated statutory references are to the Code of Civil Procedure.

2

arguments advanced by the Crosby Clinic and agree with the Kirkebys that the Clinic does not have standing to challenge the damages awarded against Burns. Accordingly, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Initial Litigation*

The underlying lawsuit was filed by the Kirkebys in 2017 against Burns, who they alleged defrauded them and embezzled from their businesses. The lawsuit was also filed derivatively on behalf of MHCD, LLC, an entity jointly owned by the Kirkebys and Burns. In January 2018, the Kirkebys filed their First Amended Complaint (FAC) against Burns and various other entities alleged to be controlled by Burns, including the Crosby Clinic, which the FAC referred to as the "Crosby Center Entities."[2]

The FAC alleged the Kirkebys decided to start a drug and alcohol abuse rehabilitation facility in 2002 shortly after meeting Burns. According to the complaint, Burns claimed to be a licensed attorney and experienced business manager, who would help them operate the rehab business. The FAC alleged that in 2004 Anastasia purchased a single family home located on Camino De Las Lomas in Escondido (the Camino Property) to operate a residential rehabilitation facility. The Kirkebys and Burns agreed that Burns would manage the business, while the Kirkebys would assist in day-to-day operations. In 2007, the Kirkeby trust leased the property to MHCD, which operated the rehabilitation business under the name Crosby Center.

---

[2] The complaint named as the other entity defendants: Interlawus, LLC; NSI Services, LLC (NSI); AAE Alcohol Rehab Service Center; AAE Crosby Center; AAE Women Eating Disorder Center; Dream Catcher Detox Center, Inc.; KBY Properties, LLC; Crosby Recovery Foundation; AAA National Credit Reporting, Corp.; Internet Creative Marketing, Inc.; Stonegate Investment Group, LLC; Applied Psychology Systems, LLC; The Neuroscience Institute; and L Burns Research Institute.

The FAC alleged that, unbeknownst to the Kirkebys, Burns misappropriated funds, assets, business opportunities, and real estate through his management of the Crosby Center. The Kirkebys alleged that in 2014 they discovered Burns was embezzling the business's assets and contacted the Federal Bureau of Investigation because they believed Burns had violated the law in his mismanagement of the rehabilitation business. The complaint further alleged Burns and the Crosby Center Entities were each other's alter egos and had conspired to defraud the Kirkebys.

The FAC alleged derivative claims on behalf of MHCD (causes of action 1–13) for breach of fiduciary duty, breach of the duty of loyalty, aiding and abetting another's breach of fiduciary duty, breach of contract, conversion, violation of the California Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.), concealment, unjust enrichment, and for an accounting and declaratory relief. The FAC alleged direct causes of action against Burns and the entity defendants (causes of action 14–27) for breach of fiduciary duty, breach of duty of loyalty, aiding and abetting another's breach of fiduciary duty, breach of the operating agreement, intentional interference with prospective economic advantage or contractual relationship, concealment, breach of the implied covenant of good faith and fair dealing, unjust enrichment, constructive fraud, accounting, and violation of the federal Racketeer Influenced and Corrupt Organizations Act (RICO), section 1962(a), (b), (c) and (d) of title 18 of the United States Code.

On October 24, 2019, MHCD filed a cross-complaint, which alleged similar claims against Burns, his wife Anne Kahn, and the same Crosby Center Entities. In addition, the complaint contained a cause of action for quiet title, which alleged that Burns and the Crosby Center Entities' concealment, misappropriation, and diversion of MHCD's assets resulted in

the defendants wrongfully obtaining title to the Camino Property and a second property located on Circle R Way in Escondido (Circle R Property). MHCD sought adjudication of its ownership rights in the properties, and to quiet title in the two properties in its favor. The following day, MHCD filed notices of pendency of action with the San Diego County recorder related to the properties.

That same day, October 25, 2019, the trial court struck the answers of many of the entity defendants, including the Crosby Clinic, for failure to retain counsel. The court also entered defaults against them.

B. *Stipulated Injunction Preventing Transfer of Property*

On December 10, 2019, MHCD, Burns, the entities controlled by Burns that remained named parties in the litigation (NSI, Interlawus, Inc., and Health Care Investments, Inc.), and Kahn entered into two stipulations, one for each of the two properties, enjoining their transfer. The stipulations state the parties "agree not to, and shall be enjoined from, encumbering, impairing, selling, transferring, conveying, or otherwise assigning the real estate and improvements ... during the pendency of this lawsuit." Under the stipulations, the Crosby Clinic and NSI were permitted to seek refinancing of the Circle R Property. MHCD agreed to dismiss without prejudice its quiet title claim and release the notices of pendency of action filed for each property with the county recorder, which would allow for the refinancing of the Circle R Property using the Camino Property as collateral. The stipulations were signed into orders by the trial court on December 17, 2019.

On November 3, 2020, Burns encumbered the Camino Property with a deed of trust in the amount of $200,000. A little over a month later, on December 14, 2020, Burns conveyed title in the Camino Property from the Crosby Clinic to "Larry Burns Trustee of the Xanadau Dominican Irrevocable

5

Trust - 2020" by grant deed. As a result of this transfer, on March 1, 2021, the Kirkebys recorded the stipulated orders on the Camino and Circle R Properties with the San Diego County recorder.

On November 3, 2021, the Kirkebys filed an application for an order to show cause asserting that Burns had violated the court's stipulated orders concerning the two properties by transferring and encumbering the Camino Property with a $200,000 mortgage. On December 2, 2021, the court granted the application and issued an order finding Burns in contempt. The court subsequently ordered Burns to remove the encumbrance and reconvey title back to the Crosby Clinic by January 24, 2022.

On January 31, 2022, Kahn filed an ex parte application requesting to dissolve the lis pendens that the Kirkebys filed with the county recorder and also seeking a stay of a court order appointing a receiver. Kahn argued she was a significant investor in the properties and the lis pendens on the properties were improper. The court denied the application.

On February 18, 2022, Kahn filed a notice of pendency of action for the Camino and Circle R Properties based on her filing of another lawsuit in San Diego Superior Court, *Anne Kahn, Inc. v. Burns*, Case No. 37-2021-00001811-CU-BC-NC. In that complaint, Anne Kahn, Inc. alleged it owned and operated the Circle R Property as a resort, Burns and NSI unlawfully breached their agreement that Anne Kahn, Inc. would receive all profits from the operation, and Burns and NSI had unlawfully taken title to the property.

C. *Terminating Sanctions & Further Violations of Stipulated Injunction*

In March 2022, the Kirkebys' counsel made three requests to Kahn to remove the notices of pendency she had placed on the two properties based on her lawsuit. The Kirkebys asserted the notices violated the stipulated order preventing encumbrances on the properties and Kahn had made material

6

misrepresentations about her ownership of the properties in her complaint against Burns, NSI, and the Crosby Clinic. Kahn did not respond to the requests. As a result, on March 29, 2022, the Kirkebys and MHCD jointly filed an ex parte application to show cause asserting Kahn was in contempt of the stipulated orders. Kahn then removed the notice of pendency on the Camino Property before the trial court considered the application.

After Burns failed to comply with the order requiring him to reconvey the property back to the Crosby Clinic, on March 3, 2022, the Kirkebys and MHCD jointly moved for sanctions against Burns and NSI, specifically requesting that the court strike Burns's answer to the FAC and strike NSI's answer to MHCD's cross-complaint. The Kirkebys also moved for sanctions based on Burns's failure to respond to discovery. The motions were not opposed, and on May 2, 2022, the trial court granted the motions, filing two orders prepared by the Kirkebys. The first ordered Burns's answers to the FAC and MHCD's cross-complaint stricken, deemed all matters alleged in the FAC and cross-complaint admitted as to Burns, and ordered "[t]he defaults of Burns ... [to] be effective as of the date of the Court's signing of the order." The second order deemed all of the allegations in the cross-complaint against NSI and the Crosby Clinic (as well as the other entities controlled by Burns) admitted as to Burns. Each order also stated the plaintiffs would be "permitted to prove damages against Burns [and the entity defendants] through use of written declarations submitted under penalty of perjury and the use of documentary evidence of damages attached thereto."

When Burns still failed to transfer the Camino Property, the Kirkebys and MHCD filed a joint application to appoint an elisor to sign a quit claim deed transferring title and improvements in the Camino Property to the

Crosby Clinic. The court granted the application on June 10, 2022, and the property was transferred by quitclaim deed that day.[3]

On September 26, 2022, the Kirkebys and MHCD dismissed Kahn from the underlying proceedings without prejudice. Two days later, on September 28, 2022, a judgment of dissolution was entered in divorce proceedings between Kahn and Burns. The judgment incorporated a marital settlement agreement (MSA), which included a document titled "Settlement Agreement" and another titled "Stipulated Addendum to Judgment of Dissolution of Marriage and Marital Settlement Agreement."

The Settlement Agreement, incorporated into the MSA, provided that title in the Camino Property would be transferred from the Crosby Clinic to Kahn free and clear of any interest of Burns or the Crosby Clinic. The document, however, stated the transfer was "[s]ubject to approval by the Court in related matters, including the Kirkeby Matter." The "Stipulated Addendum" stated the parties to the dissolution agreed that the Circle R and Camino Properties "shall be awarded to [Kahn] as her sole and separate property and the parties shall sign all documents necessary to transfer all two (2) properties to [Kahn]." On September 30, 2022, Burns, as manager of the Crosby Clinic, transferred title in the Camino Property to Kahn by quitclaim deed.

D. *Proceedings Leading to Judgment*

A minute order dated October 28, 2022 stated that the Kirkebys' counsel advised the court the parties had settled and requested the trial date be vacated. The order further stated that counsel requested to "set a default

---

[3]     Anne Kahn, Inc. then brought a motion to intervene in the underlying proceedings, which the court denied. In the order, the court stated its finding that Anne Kahn, Inc. and Burns had forged a lease agreement between Anne Kahn, Inc. and NSI to prevent the sale of the Circle R Property.

8

prove-up hearing for the remaining of the defaulted defendants" and set the hearing for November 18, 2022. The order did not specify the defendants to which it was referring. At the November 18 hearing, memorialized by a minute order, the Kirkebys requested the matter be set for trial on the issue of damages. On November 22, 2022, the court entered an order, prepared by the Kirkebys, which (1) stated that, in lieu of the prove-up hearing, the matter would be set for trial "on the issue of damages only;" (2) modified the court's May 2, 2022 order issuing terminating sanctions against Burns to be "changed to issue sanctions on the issue of liability, but that the matters alleged in [the FAC] remain deemed admitted as to Burns;" and (3) stated that "the defaults previously entered against Burns pursuant to the [May 2, 2022 order] be vacated, but that Burns be permitted to only present evidence at the upcoming trial on the issue of damages."

On January 5 and 30, 2023, the parties proceeded to a bench trial on the issue of damages for the direct claims asserted in the FAC against Burns. On February 6, 2023, the court issued a minute order stating it would serve as the final decision after trial. The order states that, "by clear and convincing evidence, as well as pre-trial motion work and rulings, plaintiffs have established their claims against Defendant Burns." The court found that while the Kirkebys "were clearly evasive in cross-examination," they were "somewhat more persuasive than" Burns and had established their damages claims against him.

The court concluded that "the evidence regarding intentional transfer of assets, sometimes in direct contravention of existing court orders, [wa]s abundant," and it awarded the Kirkebys "$3,037,216 in damages directly related to the intentional actions" of Burns. The court also awarded treble damages for a total compensatory damage award of $9,111,648. The court

9

denied the Kirkebys' claim for punitive damages, finding they had not established that Burns would have the ability to satisfy such a judgment. Finally, the court found the Kirkebys were entitled to an award of attorney's fees against Burns and could seek them in postjudgment proceedings.

On March 16, 2023, Kahn filed an ex parte application to expunge the Camino stipulation. Therein, Kahn asserted she was the owner of the property pursuant to the judgment in her marital dissolution proceeding, she had been dismissed from this case in September 2022, and the Camino stipulation was never signed by the Crosby Clinic, which had been dismissed as a defendant in December 2022. Based on these assertions, Kahn argued the stipulated injunction preventing the transfer of the property pursuant to the MSA was void and no longer in effect. On March 20, 2023, the court denied the ex parte application, but set the matter to be determined by noticed motion and calendared a hearing for May 5, 2023.

Then, on March 29, 2023, the Kirkebys filed a motion to compel compliance with the Camino Property stipulated injunction. Therein, they asserted that Burns had again violated the injunction by transferring the Camino Property to Kahn via quitclaim deed on September 30, 2022 pursuant to Kahn and Burns's marital dissolution judgment. The Kirkebys argued the "quitclaim deed executed by Burns as managing member of the Crosby Clinic conveying title to Khan is a direct violation of the Camino [stipulation] and a clear attempt to prevent the attachment and sale of an asset so as to defraud Burns's judgment creditors, the Kirkebys." They further argued Burns and Kahn were bound by the injunction despite the fact the Crosby Clinic was not a signatory to the stipulation because they had proven Burns was the entity's alter ego. In addition, the Kirkebys asserted

10

the transfer was invalid as an unlawful attempt to defraud them as judgment creditors.

On April 11, 2023, Kahn filed a motion to expunge the stipulated injunction for the Camino Property. Therein, Kahn repeated the argument she advanced in her previous ex parte application—that the stipulated injunction did not preclude the transfer because the Crosby Clinic was not a party to it. She also asserted that the injunction was invalid because no real property claim supported the initial notice of pendency placed on the property.

E. *Judgment & Post-Judgment Proceedings*

The court entered judgment in favor of the Kirkebys on April 20, 2023. The judgment, prepared by the Kirkebys, included the court's finding, set forth in its February 6, 2023 order, that the Kirkebys had established their claims against Burns and that they had "incurred $3,037,216 in damages directly related to the intentional acts of [Burns] in transferring, hiding and misappropriating funds and the Circle R property, in causes of action 14–27 of the" FAC and granting the treble damages sought by the Kirkebys for causes of action 24–27, for a total "compensatory damage award of $9,111,648."[4] The judgment separately listed the thirteen causes of action and for each, except the sixteenth, stated that "judgment is entered in favor of Plaintiffs and against Burns." The sixteenth cause of action, titled "aiding and abetting another's breach of fiduciary duty," stated "judgment is entered

---

[4]     The judgment also noted that it had entered sanctions against Burns prior to trial that "included admission of Paragraphs 25 through 28 of the FAC which alleged, among other things, that at all relevant times to these proceedings, Burns and the Crosby Center Entities, inclusive of NSI and the Crosby Clinic, were the alter egos of each other, and further, the alter egos of Burns as well as each other's agent, servant, employee, assignee, successor-in-interest, co-conspirator and aider and abettor."

11

in favor of Plaintiffs against the Crosby Center Entities, inclusive of NSI and the Crosby [Clinic]."[5]

On May 5, 2023, the trial court granted the Kirkebys' motion to compel compliance with the Camino stipulation and denied Kahn's competing motion to expunge. In addition, the court ordered Kahn to reconvey title to the Camino Property to the Crosby Clinic in accordance with the terms of the Camino stipulation. On May 12, 2023, Kahn conveyed titled in the Camino Property to the Crosby Clinic via a quitclaim deed.

On May 16, 2023, the Kirkebys filed and served notice of entry of the April 20, 2023 judgment.

On May 18, 2023, Kahn filed a notice of appeal from the court's May 5, 2023 order granting the Kirkebys' motion to compel compliance with the Camino stipulation.[6] The same day, Kahn, as its purported managing member, caused the Crosby Clinic to convey the Camino Property back to Kahn. In response, on July 20, 2023, the Kirkebys filed an ex parte application for an order to show cause as to why Kahn should not be held in contempt for again violating the Camino stipulation by conveying the property back to herself. The application asserted that Kahn had unlawfully conveyed title to herself on May 18, 2023, then reconveyed the property back to the Crosby Clinic by another quitclaim deed on July 12, 2023. The application further asserted this reconveyance did not eliminate the need for the ex parte application because it "includes improper language referring to

[5]    One instance in this section refers to the "Crosby Center," but the rest refer to the Crosby Clinic. The parties do not contend the judgment is referring to another entity besides the Crosby Clinic.

[6]    This court affirmed the trial court's May 5, 2023 order in an unpublished opinion issued on September 17, 2024. (*Kirkeby v. Kahn* (Sept. 17, 2024, D082333) [nonpub. opn.].)

Khan's supposed ownership interest that will unnecessarily and unlawfully cloud title and which is, by itself, a separate violation of the [Camino stipulation's] explicit bar against impairment of title to the Camino Property." The court issued an order granting the application and ordering Kahn to appear on August 18, 2023 to show cause why the court should not hold her contempt of the stipulation and the court's May 5, 2023 order.[7]

On August 18, 2023, the Crosby Clinic filed a motion to vacate the court's November 22, 2022 order vacating the entry of default against Burns and the subsequent judgment entered on April 20, 2023. The Crosby Clinic, represented by Khan's counsel, asserted that Burns had been deprived of due process because the Kirkebys had failed to set forth the amount of damages they were seeking in the FAC. The motion also argued the failure to identify the amount of damages violated section 425.10, subdivision (a)(2). The Crosby Clinic asserted that by taking a default in October 2019, it gave up its right to defend the lawsuit in exchange for the certainty that it could not be held liable for any damages because none were asserted in the complaint.

The Clinic also argued that the court's order vacating the default judgment entered against Burns was void because it was obtained by the Kirkebys through the extrinsic fraud of not providing Burns notice of their request to vacate the default against him. Finally, the Crosby Clinic argued it had standing to attack the judgment because, "if given full effect, [the judgment] would injuriously affect [the] Crosby Clinic, LLC's rights."

The Kirkebys opposed the motion to vacate. They argued the Crosby Clinic lacked standing to contest the judgment because it had not shown any injury, and that its corporate status as a separate entity should be disregarded because it had been adjudged the alter ego of Burns. The

---

7    The record contains no further discussion of the contempt proceeding.

13

Kirkebys also asserted the damage award was against only Burns and thus the Crosby Clinic could show no injury. In its reply to its motion to vacate, the Crosby Clinic responded that it had standing because, although the judgment "*should* be against only Defendant Burns," it was also against the Crosby Clinic. Specifically, the reply pointed out that, with respect to the FAC's sixteenth cause of action for aiding and abetting a breach of fiduciary duty, the judgment states, "Judgment is entered in favor of Plaintiffs against the Crosby Center Entities, inclusive of NSI and the Crosby [Clinic]."

After a hearing on the motion to vacate, on September 29, 2023, the trial court issued an order denying the motion. In its order, the court stated, "After careful consideration of the parties' arguments and authorities, the Court is unpersuaded the Kirkebys obtained the November 22, 2022, order, and subsequent April 20, 2023, judgment, through extrinsic fraud .... While the Court declines to address every argument raised, the Clinic's argument that Burns relied on entry of default as a tactical decision is belied by and decisively at odds with the record and history of this matter. As noted in the Kirkebys' opposition, Burns sought to have the subject defaults vacated, albeit unsuccessfully, participated in numerous motions, and ultimately participated in trial in January of 2023."

The Crosby Clinic timely appealed from the September 29, 2023 order.

DISCUSSION

As noted, the Crosby Clinic asserts the trial court erred by denying its motion under section 473, subdivision (d), because the judgment entered against it, and Burns, is void. Specifically, the Crosby Clinic argues that because the FAC contained no specific damage claim amount, section 580 precluded the court from entering judgment that included an award of compensatory damages against it, and Burns. The Kirkebys respond that

14

"[t]here is nothing in the record that indicates a default judgment was entered against" the Crosby Clinic, and that the damages awarded to them were against Burns only. The Kirkebys also assert that the Crosby Clinic lacks standing to challenge the April 20, 2023 judgment, which it asserts was entered only against Burns.

I

"Although a trial court has discretion to vacate the entry of a default or subsequent judgment, this discretion may be exercised only after the party seeking relief has shown that there is a proper ground for relief, and that the party has raised that ground in a procedurally proper manner, within any applicable time limits. (See generally Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2003)[¶] 5:276 et seq., p. 5–66 et seq. (rev.# 1, 2006) [describing various grounds, procedures and time limits applicable to seeking relief from default].) The proper procedure and time limits vary, depending on the asserted ground for relief." (*Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 495.)

"A default judgment is void if the trial court lacked jurisdiction over the parties or the subject matter of the complaint or if the complaint failed to 'apprise[ ] the defendant of the nature of the plaintiff's demand,' or if the court granted relief which it had no power to grant including a default judgment which exceeds the amount demanded in the complaint." (*Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 830 (*Falahati*); see also *David S. Karton, A Law Corp. v. Dougherty* (2009) 171 Cal.App.4th 133, 149 ["default judgment is void on the face of the record and therefore 'should be vacated,' because it awards relief that exceeds what was demanded in [the operative] complaint"].)

15

"On appeal from an order denying a motion for relief from default or a default judgment we will not disturb the trial court's factual findings ... based on substantial evidence.  It is the province of the trial court to determine the credibility of the declarants and to weigh the evidence." (*Falahati, supra*, 127 Cal.App.4th at p. 828.)  However, "whether the default and default judgment complied with constitutional and statutory requirements are questions of law as to which we exercise independent review." (*Ibid*.)

## II

The Crosby Clinic attacks the judgment as void, both as it relates to the Clinic and as it relates to Burns.  The Clinic argues that because the Kirkebys failed to plead a specific amount of damages in the FAC, the trial court lacked jurisdiction to enter the judgment awarding them damages.  Section 425.10, subdivision (a) states that a complaint shall contain both a "statement of the facts constituting the cause of action, in ordinary and concise language" and a "demand for judgment for the relief to which the pleader claims to be entitled."  Further, the statute provides that "[i]f the recovery of money or damages is demanded, the amount demanded shall be stated." (§ 425.10, subd. (a).)

In addition, section 580, subdivision (a) provides that "[t]he relief granted to the plaintiff, *if there is no answer*, cannot exceed that demanded in the complaint, in the statement required by Section 425.11, or in the statement provided for by Section 425.115; but in any other case, the court may grant the plaintiff any relief consistent with the case made by the complaint and embraced within the issue.  The court may impose liability, regardless of whether the theory upon which liability is sought to be imposed involves legal or equitable principles." (Italics added.)  Cases in which terminating sanctions strike a defendant's answer are subject to the same

16

limitation. (See *Electronic Funds Solutions, LLC v. Murphy* (2005) 134 Cal.App.4th 1161, 1175 [§ 580 governs "the amount of damages available on a default judgment entered as a discovery sanction"].)

" '[T]he primary purpose of the section is to guarantee defaulting parties adequate notice of the maximum judgment that may be assessed against them.' " (*Stein v. York* (2010) 181 Cal.App.4th 320, 325 (*Stein*).) "A defendant has the right to elect not to answer the complaint. [Citation.] Although this may have been a tactical move by [a] defendant, it is a permissible tactic. [A d]efendant, relying on the absence of a statement of damages in the complaint, [is] entitled to have default entered against him. Section 580 'ensure[s] that a defendant who declines to contest an action ... [is] not ... subject[ed] ... to open-ended liability' and operates as a limitation on the court's jurisdiction." (*Ibid.*)

Section 580 is strictly construed. (*Greenup v. Rodman* (1986) 42 Cal.3d 822, 826.) " 'The notice requirement of section 580 was designed to insure fundamental fairness. Surely, this would be undermined if the door were opened to speculation, no matter how reasonable it might appear in a particular case, that a prayer for damages according to proof provided adequate notice of a defaulting defendant's potential liability.' " (*Stein, supra,* 181 Cal.App.4th at p. 325.) "If a default judgment awarded against a defendant exceeds the relief demanded in the complaint [citation], or is a different form of relief than demanded in the complaint [citation], the defendant is 'effectively denied a fair hearing … [citations].' Thus, a default judgment in an amount greater than the amount demanded is void and subject to either direct or collateral attack." (*Id.* at p. 326.)

Here, there is no dispute that the FAC did not contain a demand for a specific amount of damages against any defendant. Instead, the Kirkebys

prayed only for "compensatory damages in an amount to be determined at trial," as well as "exemplary damages" and "treble damages." Thus, an award of damages by default judgment is subject to the limitation of section 580. With respect to the Crosby Clinic, the record establishes that on October 25, 2019, the court struck its answer, found it had failed to retain counsel, and entered a default against it. From this point forward, the Crosby Clinic was defaulted and effectively chose not to participate in the matter. Over three years later, the judgment in the case, which ostensibly includes the defaulted Crosby Clinic, was entered on April 20, 2023.

On appeal from the denial of its motion to vacate the judgment, the Crosby Clinic argues that the judgment is not clear as to "whether and to what extent damages were awarded against" it. The Crosby Clinic asserts that "[t]he language of the judgment does not permit any definitive conclusion. On the one hand, the judgment states that [the Crosby Clinic] is liable for 'aiding and abetting another's breach of fiduciary duty,' and that it 'acted with malice, fraud or oppression [such that] punitive damages [] are appropriate'. But the trial court did not indicate, at least not clearly, whether damages were imposed" on the Crosby Clinic. Thus, the Crosby Clinic asserts, "[a]ssuming damages were awarded against [it], the judgment is void (as to [it])." The Clinic asks this court to declare any damages imposed on it void.

We agree with the Crosby Clinic that because it was defaulted at the time the court entered judgment, and the Kirkebys did not specifically plead the amount of damages they were seeking, under section 580 the trial court lacked authority to award damages against the Clinic. Thus, any damages awarded against the Crosby Clinic would be void. However, we do not agree with the Clinic that the court awarded, or arguably awarded, damages

18

against it.  Although the judgment does make a finding against the Crosby Clinic with respect to the sixteenth cause of action in the FAC, aiding and abetting Burns's breach of fiduciary duty, the judgement is clear that the damages awarded are against Burns *only*.

As the Crosby Clinic states in its opening brief, the sixteenth cause of action is the only portion of the judgment that arguably refers to it and this section does not state the Crosby Clinic is responsible for any damages. Further, the "Damages" section of the judgment does not refer to the Crosby Clinic at all.  Rather, it explicitly states that the damages are "directly related to the intentional actions of Burns" and provides for "a total compensatory damage award in favor of the Kirkebys [*and*] *against Burns* of [$9,314,150]."  (Italics added.)  Accordingly, the judgment does not award any damages against the Crosby Clinic and does not run afoul of section 580 as it relates to the Clinic.

### III

The Crosby Clinic next argues that the judgment is void as it relates to Burns.  The Kirkebys respond that the Crosby Clinic lacks standing to challenge the judgment against Burns.  We agree with the Kirkebys.

"An appellant must show prejudicial error affecting his or her interest in order to prevail on appeal.  (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 244, p. 250.)  An appellant cannot urge errors which affect only another party who does not appeal." (*In re Vanessa Z.* (1994) 23 Cal.App.4th 258, 261; see also *City of Riverside v. Horspool* (2014) 223 Cal.App.4th 670, 678 ["Where only one of several parties appeals from a judgment, the appeal includes only that portion of the judgment adverse to the appealing party's interest, and the judgment is considered final as to the nonappealing parties."]; *Serrano v. Stefan Merli Plastering Co., Inc.* (2008) 162 Cal.App.4th

1014, 1026 ["Only a party aggrieved by a judgment or order has standing to appeal the judgment or order."].)  The Crosby Clinic asserts the judgment is void as to Burns, but it has not shown what impact the allegedly invalid judgment has on it.

In its appellate briefing, the Crosby Clinic points to the trial court's terminating sanctions that included a finding Burns was the alter ego of the Crosby Entities, and this court's statement pointing to this finding in our opinion affirming the trial court's order enforcing the Camino stipulation against Kahn.  The Clinic, however, does not explain how this finding supports its standing to challenge the judgement entered against Burns after the damages trial, in which only Burns participated and that resulted in a damage award solely against him.  (See *County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737 [To be aggrieved, "[a]ppellants interest ' "must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment." ' "].)  The Crosby Clinic attempts to put the cart before the horse to establish its standing.  There is no evidence in the record establishing the Crosby Clinic will be impacted by the damage judgment against Burns.  Put simply, whether the corporate veil of the Crosby Clinic may be pierced for purposes of satisfying the judgment against Burns is not a question before this court.[8]  (See *Wolf Metals, supra*, 4 Cal.App.5th at p. 703 [" 'The alter ego doctrine prevents individuals ... from

[8]    We express no view on this question, but do note that "[i]n the case of default judgments, the application of the alter ego doctrine is subject to a limitation arising from considerations of due process.  Under … section 187, 'to amend a judgment to add a defendant, thereby imposing liability on the new defendant without trial, requires *both* (1) that the new party be the alter ego of the old party *and* (2) that the new party ... controlled the litigation, thereby having had the opportunity to litigate, in order to satisfy due process concerns.' " (*Wolf Metals Inc. v. Rand Pacific Sales, Inc.* (2016) 4 Cal.App.5th 698, 703 (*Wolf Metals*).)

misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds.' "].)

The Crosby Clinic also argues that because the Kirkebys filed an unsuccessful motion to add the Crosby Clinic as a judgment debtor in August 2024, it should be permitted to challenge the judgment entered against Burns. This motion, however, was filed *after* the Crosby Clinic appealed from the denial of its motion to vacate under section 473, subdivision (d) and is not a part of the record on appeal. Accordingly, we decline to consider this post-order development. (See *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [reviewing courts generally do not consider matters which were not part of the record at the time the order or judgment was appealed].)

In sum, the Crosby Clinic has not established it is aggrieved by the judgment against Burns. Burns did not appeal from the judgment entered against him and the Crosby Clinic has not shown its interests are so intertwined with Burns that it should be permitted to challenge the judgment on his behalf. Accordingly, we decline to reach the Crosby Clinic's arguments that the judgment entered against Burns after the damages trial is invalid either because the trial court erroneously vacated the default entered against him or because the Kirkebys failed to comply with section 580.

## DISPOSITION

The order is affirmed. The costs of appeal are awarded to Respondents.


McCONNELL, P. J.


WE CONCUR:


HUFFMAN, J.

21

CASTILLO, J.